UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NORMA ANDÚJAR VALENTÍN;<br>    Demandantes,<br><br>vs.<br><br>ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL; HOSPITAL PAVÍA SANTURCE; HOSPITAL ESPAÑOL AUXILIO MUTUO DE PUERTO RICO; DR. PEDRO HERNÁNDEZ RIVERA; CONJUGAL PARTNERSHIP constituted by DR. PEDRO HERNÁNDEZ RIVERA & JANE DOE HERNÁNDEZ ; DR. CARLOS GARCÍA RODRÍGUEZ; CONJUGAL PARTNERSHIP constituted by DR. CARLOS GARCÍA RODRÍGUEZ y JANE DOE GARCÍA ; DR. JUAN LÓPEZ DE VICTORIA; CONJUGAL PARTNERSHIP constituted by DR. JUAN LÓPEZ DE VICTORIA & JANE DOE LÓPEZ DE VICTORIA; DR. HUMBERTO MUÑOZ RODRÍGUEZ; CONJUGAL PARTNERSHIP constituted by DR. HUMBERTO MUÑOZ RODRÍGUEZ & JANE DOE MUÑOZ; DR. YANIRA AVILÉS BURGOS; CONJUGAL PARTNERSHIP constituted by DR. YANIRA AVILÉS BURGOS & JOHN DOE AVILÉS; DR. JOHN DOE; DR. RICHARD ROE; RICHARD DOE; INSURANCE COMPANY A; INSURANCE COMPANY B; CORPORATION X,; CORPORATION Y; PROFESSIONAL PARTNERSHIP X; PROFESSIONAL PARTNERSHIP Y;<br><br>    Defendants. | CIVIL NO.  18-1811<br><br><br>PLAINTIFFS DEMAND<br>TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

    **COME NOW** plaintiffs through their undersigned attorney and very respectfully

**STATE, ALLEGE AND PRAY:**

## I.   JURISDICTION

1.1   The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Section 1332 (a) (1).

1.2   This action is of a civil nature, invoking exclusive of interest and costs a sum in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).  Every issue of law and fact alleged herein is wholly between citizens of different states.  Plaintiff invokes the diversity jurisdiction of this Honorable Court pursuant to the provisions of Article III of the Constitution of the United States.

1.3   The Statute of Limitations was tolled by the timely filing of a complaint in the Superior Court of Puerto Rico which was voluntarily dismissed without prejudice on October 30, 2017

1.4   Because of plaintiffs' lack of information and knowledge regarding all the facts and events that surrounded Sanuel Boria Andujar's damages and premature death, the complaint was filed, and the letters were sent, with the purpose of tolling the statute of limitations in the torts action.

## II.   THE PARTIES

2.1   Plaintiff Norma Andujar Valentin  is  the aunt  of the deceased Samuel Boria Andújar , is single  and is has been citizen and resident of the state of Florida  and is domiciled in Orlando , Florida.

2.2   Codefendant Hospital Español Auxilio Mutuo de Puerto Rico is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of

2

business in the said Commonwealth of Puerto Rico.

2.3 Codefendant Ashford Presbyterian Community Hospital is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in the said Commonwealth of Puerto Rico.

2.4 Codefendant Hospital Pavía Santurce is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in the said Commonwealth of Puerto Rico.

2.5 Codefendant Dr. Pedro Hernández Rivera, his wife Jane Doe Hernandez and the conjugal partnership formed between them, are citizens of the Commonwealth of Puerto Rico.

2.6 Codefendant Dr. Carlos García Rodríguez, his wife Jane Doe García and the conjugal partnership formed between them, are citizens of the Commonwealth of Puerto Rico.

2.7 Codefendant Dr. Juan López de Victoria, his wife Jane Doe García and the conjugal partnership formed between them, are citizens of the Commonwealth of Puerto Rico.

2.8 Codefendant Dr. Humberto Muñoz Rodríguez, his wife Jane Doe Munoz and the conjugal partnership formed between them, are citizens of the Commonwealth of Puerto Rico.

2.9 Codefendant Dr. Yanira Avilés Burgos, her husband John Doe Aviles and the conjugal partnership formed between them, are citizens of the Commonwealth of Puerto Rico.

2.10 Codefendants, whose names are unknown to plaintiffs, Dr. Richard Roe, Dr. John Doe and Richard Doe are citizens of the Commonwealth of Puerto Rico and are jointly and severally liable to plaintiffs.

2.11 Codefendants Corporations X, &Y, whose name is unknown to plaintiffs, is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

2.12   Codefendants Professional Partnerships X & Y whose name is unknown to plaintiff, are entities organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

2.13   Codefendants Insurance Companies A & B, whose name is unknown to plaintiff, are entities organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

### III.   ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

3.1   On May 24, 2016 Samuel Boria Andújar, 23 years old went to the Emergency Room at Ashford Presbyterian Community Hospital referring upper right quadrant pain, vomits, nausea.

3.2   Upon evaluation the patient presented with fever and elevated WBC's (white blood cell count), the abdominal sonogram performed revealed gallbladder stones with probable cholecystitis, without dilatation of biliary ducts.

3.3   The emergency room physician placed consult to surgery and on May 25, 2016, codefendant Dr. Juan López de Victoria, recommended an emergency laparoscopic cholecystectomy, which was performed by him on that same day.

3.4   According to the Operative Note, there was gallbladder empyema, gangrene and adherences to the gallbladder and the liver. The surgeon also noted that the gallbladder was not completely removed and was left open due to severe inflammation and that all the visible stones were removed.

3.5   The pathology report revealed acute cholecystitis with reactive epithelial changes;

cholelithiasis.

3.6     Samuel remained hospitalized receiving antibiotic due the operative findings of pus in the gallbladder and the leukocytosis that he was suffering.

3.7     The patient was discharged home on May 29, 2016 with a five-day course of antibiotic (Augmentin) prescription.

3.8     Samuel returned to his job as a maintenance employee.

3.9     By August 2016, Samuel started to turn yellow and to suffer diarrhea and nausea.

3.10    The patient went to the Emergency Room at Doctors center San Juan where he was noted with marked jaundice for which radiology studies were performed.

3.11    According to the Abdominal and Pelvic CT Scan report, signed on August 13, 2016, the study revealed intra and extra hepatic dilated biliary duct, recommending evaluation with MRCP and or ERCP.

3.12    Samuel Boria was then referred on August 16, 2016 to Hospital Pavia Santurce for these studies and to continue his care.

3.13    On August 16 the patient was admitted to Hospital Pavia Santurce with a diagnosis of obstructive jaundice under the survives of codefendant Yanira Aviles Burgos and was treated by the gastroenterologist, codefendant Dr. Humberto Munoz and other hospital personnel.

3.14    Codefendant Dr. Humberto Muñoz performed an ERCP which revealed a large stone in the bifurcation of the cystic duct and the common biliary and others tones in the proximal portion of the cystic duct. He also performed a biliary sphincterotomy and attempted mechanical lithotripsy to break the large stone, which was not completed due to equipment malfunction. He did not place a biliary stent.

3.15    Dr. Munoz then referred the patient to Interventional radiology at Hospital Pavia Santurce for a percutaneous transhepatic cholangiography (PTC).

3.16    The PTC performed on August 17, 2016 revealed intrahepatic ducts markedly dilated, multiple stones in the cystic duct and possible stenosis of the common biliary duct. A biliary drainage was placed with recommendation of repeating the cholangiogram if no pancreatitis developed.

3.17    On August 18 the laboratories performed revealed WBC 13.6, lipase 455, amylase 84 and bilirubin at panic levels (21.6).

3.18    The gastroenterologist Dr. Munoz recommended transfer of the patient to Hospital Español Auxilio Mutuo under the services of Dr. Pedro Hernandez Rivera, liver transplant surgeon and proceeded to make the arrangements for the transfer on August 18, 2016 requiring coverage authorization by the patients state insurance health plan, at that time through First Medical, PSG.

3.19    The transfer order was placed and processed by codefendant Yanira Aviles Burgos on August 18, 2016.

3.20    According to medical record at Hospital Español Auxilio Mutuo on August 22 coverage was authorized by the health insurance plan an on that day the patient was transferred and admitted to said hospital with a diagnosis of obstructive jaundice and cholelithiasis with orders for multiple laboratory studies and administration of antibiotic (Zosyn) every 6 hours and morphine as needed.

3.21    The laboratories performed on August 22 revealed Low hemoglobin (12.8), elevated WBC's (12.59), with bilirubin and hepatic enzyme also very elevated.

3.22    The MRCP showed low insertion of the Cystic duct to the CBD, multiple stones

in the cystic duct and proximal dilation of the biliary ducts.

3.23    On August 25 the patient continued with leukocytosis (12.34) , the hemoglobin had decreased to 11.5 and the bilirubin at critical high level while he continued to wait for surgery.

3.24    On August 26, 2016, codefendant Dr. Pedro Hernandez Rivera performed surgery: Roux en Y Hapaticojejunostomy". The surgeon described chronic inflammation of the gallbladder fused to the biliary ducts, with a post-operative diagnosis of Mirizzi Syndrome.

3.25    The surgery pathology revealed choledocholithiasis, gallbladder of 2.5 cm with chronic inflammation, fibrosis and cholestasis by liver biopsy.

3.26    The patient was transferred to the surgery intensive care unit under the supervision of codefendant Dr. Carlos Garcia (critical care specialist) and medical and paramedical personnel of the hospital.

3.27    Laboratories performed in the early hours of August 27 revealed hemoglobin at 9.2, low. And WBC's at 35.12 (very elevated) among other abnormal results.

3.28    Around 10:15 AM on August 27 the patient was evaluated by dr. Carlos Garcia who recommended watching the hemoglobin and the WBC's, but did not find signs of decompensation, and ordered to continue with same therapy and start him on diet.

3.29    At midnight of August 27 to 28, the CBC showed hemoglobin at 7.2 (CL) and WBC's at 30.83(H); at 2:46 AM on August 28 the hemoglobin had gone down to 6.6(CL). Around 10:00AM that say Dr. Garcia noted that the patient had decompensated and showed severe leukocytosis and SIRS (Systemic Inflammatory Response Syndrome) for which he required blood transfusions (PRBC's), cultures and antibiotic therapy.

3.30    According to the record at 3:30AM the nurse had notified Dr. García the CBC

results for which he ordered PRBC's.

    3.31    According to the nurses' notes because a discrepancy in the date of birth the transfusion had been delayed; at 6:48 Dr. Garcia ordered .9nss, iv fluids.

    3.32    It was not until 8:00AM that the transfusions which had been ordered hours before, were commenced.

    3.33    According to the record in the morning hours of August 28 Dr. Hernandez moted that the patient was tachycardic, with nausea and vomits and that an abdominal sonogram had been ordered.

    3.34    The sonogram revealed a complex collection in the hepatorenal recess with suspicion of abscess.

    3.35    The patient continued with supportive therapy and on August 20, 2016 was found with tachycardia, amylase levels @ 24,700 from the perihepatic collection, the bilirubin had increased and the coagulation factors; he was thus taken to surgery for a revision of surgery and possible drainage of the peritoneal collection.

    3.36    At 12:10 AM of August 30 the hemoglobin had dropped to 8.2.

    3.37    At 1:10PM, on August 30 an exploratory laparotomy was performed by Dr. Pedro Hernandez with a pre-operative diagnosis of intra-abdominal sepsis r/o Small bowel anastomotic leak"

    3.38    Amongst the intra-operative findings Dr. Hernandez identified a large hematoma with compression in the jejunojejunostomy area causing dilation of the roux limb and afferent limb. He also detected a small bile leak in the enterobiliar anastomosis, which he did not repair due to the friable tissue ; he thus placed an additional drainage.

    3.39    Samuel was transferred to ICU, intubated and with mechanical ventilator.

3.40    On August 30, at 3:29 PM his hemoglobin was at 7.6 (CL)

3.41    Samuel was given PRBC transfusions durin the afternoon and remained in a critical state, hypotense, icteric, desaturating, developing arrythmias; during the whole night until around 8:00AM of August 31, PRBC's and Fresh Frozen plasma ordered were not available at the hospital as documented by the nurses.

3.42    Due to the negligence of the codefendants, Samuel's condition continued to deteriorate into renal failure, multiple organ failure, hyperkalemia, sepsis, pancreatitis, shock liver, ARDS and DIC. And prematurely died around 2:30AM, on September 1, 2016.

3.43    The medical and paramedical personnel of codefendants Hospital Ashford Presbyterian Community Hospital, Hospital Español Auxilio Mutuo and Hospital Pavia Santurce caused, by their negligence, Samuel's condition and/or allowed it to deteriorate. The management of his condition (s) was one full of gross errors and omissions.

3.44    As a result of the continued errors and omissions and inadequate and clearly erroneous medical treatment, as well as an evident abandonment and disregard for his well- being on the part of codefendants Dr. Pedro Hernandez, Dr. Carlos Garcia, Dr. Humberto Munoz, Dr. Yanira Aviles, Dr. Juan Lopez de Victoria, and Hospital Ashford Presbyterian Community Hospital, Hospital Español Auxilio Mutuo and Hospital Pavia Santurce 's medical and paramedical personnel and unknown codefendants, Samuel Boria suffered immensely and prematurely died.

3.45    The medical treatment given to Samuel during his hospitalizations at all the codefendant institutions, was one of evident apathy and disregard for her well-being and of abandonment on the part of the physicians and the hospital personnel; there was a lack of monitoring, negligent and inadequate treatment as well as lack of analysis and evaluation of his

9

conditions, thus inhibiting and/or eliminating any possibility of recovery and causing him immense pain and suffering and his premature death.

3.46    During his hospitalizations Samuel Boria was treated by the physicians, nurses and paramedical personnel of Hospital Ashford Presbyterian Community Hospital, Hospital Español Auxilio Mutuo, Hospital Pavia Santurce and any unknown institution; and they are therefore jointly liable to plaintiffs for their negligent acts and/or omissions under the provisions of articles 1802 and 1803 of the Puerto Rico Civil Code.

3.47    Samuel Boria's damages and premature death were caused by the negligent and/or late treatment and lack of supervision that was given to him by all codefendants.  Had it not been by all the tortious and negligent acts, errors and omissions of all co-defendants his damages and premature death, as well as plaintiffs' damages should have been avoided.

3.48    Dr. Richard Doe, Dr.John Doe and Richard Roe, are physicians or persons or administrative personnel who treated and/or intervened with the patient during his hospitalizations and sickness and who in some way caused and or contributed to Samuel Borias damages and death as well as plaintiff's damages and are jointly and severally liable to plaintiffs. The Conjugal partnerships constituted by them with the unknown spouses, are also liable to plaintiffs inasmuch as they benefited from the physicians' acts.

3.49    The Professional Partnerships X, & Z are entities formed by the co-defendant physicians with other partners whose identity is at this moment unknown to plaintiffs and who benefited from the tortious acts of the codefendant partner; said entity and its unknown partners are therefore jointly and severally liable to plaintiffs.

3.50    Corporations X & Y are entities whose identity are unknown to plaintiffs at this moment, which was in some way benefited by the tortious acts of one or all co-defendants and/or

10

ordered or in any way had something to do with their tortious actions.

3.51    All codefendants are jointly and severally liable to plaintiffs under articles 1802 and 1803 of the Puerto Rico Civil Code for their torts and negligent acts and omissions, which departed from the standards of medical care and treatment recognized as adequate by the medical profession in light of the modern means of instruction, education and communication, and directly caused and/or contributed to Samuel Boria's damages as well as to injuries suffered by plaintiffs. The conjugal partnership of any codefendant is also liable inasmuch as it benefited from his actions.

3.52    Plaintiffs also estimate that none of the co-defendants displayed the care nor the cautionary measures that a prudent and reasonable man would in such circumstances, thus not offering Samuel Boria the medical attention that was due to her.

3.53    Codefendant Juan Lopez de Victoria, surgeon at Ashford Presbyterian, was grossly negligent in his treatment and/or lack thereof. To wit: for faulty technique in performing the laparoscopic gallbladder surgery; for not removing completely the gall bladder nor the stones; for not providing the patient with definitive and curative treatment, as converting the surgery to a laparotomy would have achieved; for not explaining nor alerting the patient of the possible complications and sequalae of the incomplete surgery; for causing the complications which the patient later developed which led him to be subjected multiple procedures and complex surgeries which ended with the patient's premature death ; among other deviations of the standard of care. His negligent acts, errors and omissions directly caused and/or contributed to the damages, deterioration and premature death of Samuel Boria.

3.54    Co-defendant Ashford Presbyterian Community Hospital was grossly negligent for not procuring nor providing Samuel Boria with competent medical and paramedical personnel

11

for the treatment and correction of his conditions.  Their negligent acts, errors and omissions directly caused and/or contributed to the damages and deterioration and premature death of Samuel Boria.

3.55    Co-defendant Ashford Presbyterian Community Hospital is also liable for the negligent and inadequate medical treatment and/or lack of treatment given to the patient by its medical and paramedical personnel including codefendant Dr Juan Lopez de Victoria ; for discharging home the patient with an incomplete surgery ;  for allowing practices in the management of the patient in violation of its own protocols and of the best practice of medicine; for causing the complications which the patient posteriorly suffered which in turn required multiple procedures and complex surgeries which ended with the patients death  ; among other violations of the standard of care.  The negligent acts, errors and omissions of their medical, technical, administrative and paramedical personnel directly caused and/or contributed to the damages, deterioration  and death of Samuel Boria.

3.56    Codefendant Pedro Hernandez, surgeon at HAM, was grossly negligent in his treatment and/or lack thereof.  To wit: for faulty technique in performing the  surgeries ; for not providing the patient with definitive and curative treatment; lack of supervision and follow up of a  patient at risk of complications; for causing him blood loss and shock; failure to insure adequate supervision and monitoring; for failure to identify in a timely manner and prevent the complications that the patient developed; for not correcting the hypovolemic and septic shock  in a timely manner and for the negligent and/or delayed resuscitation causing and/or contributing to  the patient's premature death; for not ordering medications and diagnostic studies which were indicated and necessary for the patient's treatment; for delaying corrective treatment allowing

decompensation of the patient; for not providing the patient a safe and adequate peri-operative setting; for not providing adequate and competent personnel to monitor, manage and treat the patient's emergencies; for allowing practices in the management of the patient in violation of the hospital's own protocols and of the best practice of medicine; among other violations of the standard of care; His negligent acts, errors and omissions directly caused and/or contributed to the damages, deterioration and premature death of Samuel Boria.

3.57 Codefendant Dr. Carlos Garcia, the critical care physician at HAM, was grossly negligent in his treatment and/or lack thereof. To wit: lack of supervision and follow up of a patient at risk of complications; failure to insure adequate supervision and monitoring; for failure to identify in a timely manner and prevent the complications that the patient developed; for not correcting the hypovolemic and septic shock in a timely manner and for the negligent and/or delayed resuscitation causing and/or contributing to the patient's premature death; for not providing the patient a safe and adequate peri-operative setting; for not providing adequate and competent personnel to monitor, manage and treat the patient's emergencies; for not ordering medications and diagnostic studies which were indicated and necessary for the patient's treatment; for delaying corrective treatment allowing decompensation of the patient; for allowing practices in the management of the patient in violation of the hospital's own protocols and of the best practice of medicine by the; among other violations of the standard of care. His negligent acts, errors and omissions directly caused and/or contributed to the damages, deterioration and premature death of Samuel Boria.

3.58 Co-defendant Hospital Español Auxilio Mutuo was grossly negligent for not procuring nor providing Samuel Boria with competent medical and paramedical personnel for the treatment and correction of his conditions. Their negligent acts, errors and omissions directly

caused and/or contributed to the damages and deterioration and premature death of Samuel Boria..

3.59    Co-defendant Hospital Español Auxilio Mutuo is also liable for the negligent and inadequate medical treatment and/or lack of treatment given to the patient by its medical and paramedical personnel including codefendants Dr. Pedro Hernandez and Dr. Carlos Garcia and any other unknown physician or entity ; to wit: for lack of supervision and follow up of a patient at risk of complications; for failure to insure adequate supervision and monitoring; for failure to identify in a timely manner and prevent the complications that the patient developed; ; for causing the patient blood loss and shock; for not correcting the hypovolemic and septic shock in a timely manner and for the negligent and/or delayed resuscitation causing and/or contributing to the patient's premature death; for not providing the patient a safe and adequate peri-operative setting; for not providing adequate and competent personnel to monitor, manage and treat the patient's emergencies; for its personnel failure to implement procedures and diagnostic and therapeutic orders; for not ordering medications and diagnostic studies which were indicated and necessary for the patient's treatment; for delaying corrective treatment allowing decompensation of the patient; for allowing practices in the management of the patient in violation of the hospital's own protocols and of the best practice of medicine ; among other violations of the standard of care for allowing practices in the management of the patient in violation of its own protocols and of the best practice of medicine; for causing the complications which the patient posteriorly suffered which in turn required multiple procedures and complex surgeries which ended with the patients death ; among other violations of the standard of care. The negligent acts, errors and omissions of their medical, technical, administrative and paramedical personnel directly caused and/or contributed to the damages, deterioration and death of Samuel Boria.

3.60    Codefendant Dr. Humberto Muñoz, the gastroenterologist at Hospital Pavia Santurce, was grossly negligent in his treatment and/or lack thereof. To wit: for faulty technique in performing the ERCP; for the incomplete ERCP and lithotripsy procedures; for not removing the stones; for not placing a biliary stent; for not repeating the ERCP as suggested by radiology; for not providing the patient with definitive and curative treatment; for not pursuing other treatment options and allowing the delay in treatment and transfer; for causing the patient to be subjected to a more complex surgery and the complications that followed which ended with the patient's premature death ; for not placing necessary consultations; among other deviations of the standard of care. His negligent acts, errors and omissions directly caused and/or contributed to the damages, deterioration and premature death of Samuel Boria.

3.61    Codefendant Yanira Avilés Burgos, the gastroenterologist at Hospital Pavia Santurce, was grossly negligent in her treatment and/or lack thereof. To wit: lack of supervision and follow up of a patient at risk of complications; for not pursuing other treatment options and allowing the delay in treatment and transfer of the patient; for not placing the necessary consultations; for causing the patient to be subjected to a more complex surgery and the complications that followed which ended with the patient's premature death ; among other deviations of the standard of care. Her negligent acts, errors and omissions directly caused and/or contributed to the damages, deterioration and premature death of Samuel Boria.

3.62    Co-defendant Hospital Pavia Santurce was grossly negligent for not procuring nor providing Samuel Boria with competent medical and paramedical personnel for the treatment and correction of his conditions. Their negligent acts, errors and omissions directly caused and/or contributed to the damages and deterioration and premature death of Samuel Boria.

3.63    Co-defendant Hospital Pavia Santurce is also liable for the negligent and

inadequate medical treatment and/or lack of treatment given to the patient by its medical and paramedical personnel including codefendants Dr. Yanira Avilés and Dr. Humberto Muñoz ; for allowing practices in the management of the patient in violation of its own protocols and of the best practice of medicine;  for causing the patient to be subjected to a more complex surgery and the complications that followed which ended with the patient's premature death ; for delaying corrective treatment; for not placing necessary consultations; for the incomplete ERCP and lithotripsy for equipment failure; for not providing the patient with definitive and curative treatment; for not pursuing other treatment options and allowing the delay in treatment and transfer among other violations of the standard of care.  The negligent acts, errors and omissions of their medical, technical, administrative and paramedical personnel directly caused and/or contributed to the damages, deterioration and death of Samuel Boria.

3.64    As a direct consequence of herein co-defendants gross negligence, plaintiff Norma Andujar Valentín has suffered, suffers and will forever suffer deep and severe mental and emotional anguishes, severe depression, and loss of enjoyment of life due to Samuel's , who was her nephew who she considered like a son to her, premature death.  She requests as compensation for her damages a sum of not less than TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00).

3.65    All co-defendants are jointly and severally liable under Articles 1802 and 1803 of the Civil Code of P.R.

**WHEREFORE**, plaintiffs respectfully request from this Honorable Court to:

1.    Grant a judgment against co-defendants for the sums herein requested together with pre-judgment interests, costs and reasonable attorney's fees.

2.    Grant plaintiffs such other relief, as it may deem proper and necessary under the

circumstances.

3.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs also hereby request a trial by jury in this action.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 29th day of October, 2018.

**S/Rafael E. García Rodón**
**RAFAEL E. GARCÍA RODÓN**
**USDC-PR No. 129911**
Banco Popular de PR Bldg.
206 Tetuán Street
7th Floor, Suite 701
San Juan, PR 00901
Tel. (787) 722-7788 Fax (787) 722-7748
E-mail: rgrlaw@gmail.com